1

2

3

4          UNITED STATES DISTRICT COURT

5             DISTRICT OF NEVADA

6                   * * *

7   ANN CROPPER, et al.,                    Case No. 2:19-CV-629 JCM (NJK)

8                       Plaintiff(s),              ORDER

9        v.

10  WAL-MART STORES, INC.,

11                      Defendant(s).

12

13        Presently before the court is defendant Wal-Mart Stores, Inc.'s ("Walmart") motion

14  for summary judgment.  (ECF No. 37).  Plaintiff Ann Cropper, individually and as heir and

15  special administrator of her late husband Daryl Cropper's estate, responded in opposition

16  (ECF No. 39) to which Walmart replied (ECF No. 40).

17  **I.      BACKGROUND**

18        This is a slip-and-fall case.  Cropper alleges that her late husband Daryl Cropper

19  tripped and fell on deteriorating asphalt in the parking lot of Walmart Store No. 3473 on

20  February 9, 2017.  (Compl., ECF No. 1-2 ¶ 10).  Mr. Cropper died from the injuries he

21  sustained.  (*Id.*).  Mrs. Cropper filed the instant action in Nevada state court on January 16,

22  2019, and Walmart removed the case to this court.  (ECF No. 1).  She alleges three claims for

23  relief: (1) negligence; (2) negligent hiring, training, and supervision; and (3) wrongful death.

24  (ECF No. 1-2 ¶¶ 17–33).

25        Walmart now moves for summary judgment.  (ECF No. 37).  It asserts that Cropper

26  does not offer competent objective evidence that: "(1) a hazard existed in the subject parking

27  lot when Mr. Cropper fell; (2) that Mr. Cropper actually fell where Cropper claims he did;

28

**James C. Mahan**
**U.S. District Judge**

1   and (3) thus, that [Walmart] owed any respective duty to Cropper or her decedent." (*Id.* at

2   2).

3   **II.    LEGAL STANDARD**

4   Summary judgment is proper when the record shows that "there is no genuine dispute

5   as to any material fact and the movant is entitled to a judgment as a matter of law." [1]  Fed. R.

6   Civ. P. 56(a).  The purpose of summary judgment is "to isolate and dispose of factually

7   unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and

8   to avoid unnecessary trials on undisputed facts.  *Nw. Motorcycle Ass'n v. U.S. Dep't of*

9   *Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

10   When the moving party bears the burden of proof on a claim or defense, it must

11   produce evidence "which would entitle it to a directed verdict if the evidence went

12   uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474,

13   480 (9th Cir. 2000) (internal citations omitted).  In contrast, when the nonmoving party bears

14   the burden of proof on a claim or defense, the moving party must "either produce evidence

15   negating an essential element of the nonmoving party's claim or defense or show that the

16   nonmoving party does not have enough evidence of an essential element to carry its ultimate

17   burden of [proof] at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

18   (9th Cir. 2000).

19   If the moving party satisfies its initial burden, the burden then shifts to the party

20   opposing summary judgment to establish a genuine dispute of material fact.  *See Matsushita*

21   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A dispute is "genuine" if

22   there is a sufficient evidentiary basis on which a reasonable factfinder could find for the

23   nonmoving party and a fact is "material" if it could affect the outcome of the case under the

24   governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

25

26   [1] Information contained in an inadmissible form may still be considered on summary
judgment if the information itself would be admissible at trial.  *Fraser v. Goodale*, 342 F.3d
27   1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th
Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce
28   evidence in a form that would be admissible at trial, as long as the party satisfies the
requirements of Federal Rules of Civil Procedure 56.")).

**James C. Mahan**
**U.S. District Judge**

1    The opposing party does not have to conclusively establish an issue of material fact in

2    its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

3    1987).  But it must go beyond the pleadings and designate "specific facts" in the evidentiary

4    record that show "there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  It must show

5    that a judge or jury is required to resolve the parties' differing versions of the truth.  *T.W.*

6    *Elec. Serv.*, 809 F.2d at 630.

7    The court must view all facts and draw all inferences in the light most favorable to the

8    nonmoving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement*

9    *Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).  The court's role is

10   not to weigh the evidence but to determine whether a genuine dispute exists for trial.

11   *Anderson*, 477 U.S. at 249.

12   **III.    DISCUSSION**

13   To prevail on a negligence claim, a plaintiff must establish four elements: (1) a duty,

14   (2) breach of that duty, (3) causation, and (4) damages.  *Sanchez v. Wal-Mart Stores, Inc.*,

15   221 P.3d 1276, 1280 (Nev. 2009).  A business owner has a duty to keep its premises

16   reasonably safe for patrons.  *Sprague v. Lucky Stores*, Inc., 849 P.2d 320, 322 (Nev. 1993).

17   This duty includes a duty to remedy some open and obvious hazards, *Foster v. Costco*

18   *Wholesale Corp.*, 291 P.3d 150, 156 (Nev. 2012), and a duty to adequately inspect for and

19   warn of latent or concealed hazards. *Twardowski v. Westward Ho Motels*, 476 P.2d 946, 948

20   (Nev. 1970).

21   The contours of the duty also depend on whether the hazard was "structural,

22   permanent, or continuing" or temporary.  *Eldorado Club v. Graff*, 377 P.2d 174, 176 (Nev.

23   1962) (holding that prior claims evidence is inadmissible to show notice of a temporary

24   hazard).  A permanent hazard must be unreasonably dangerous to trigger a business owner's

25   duty of care.  *Id.*

26   But at bottom, a business owner is "not an insurer of the safety of a person on the

27   premises."  *Sprague*, 849 P.2d at 322.  To that end, a business owner can only be liable for a

28   slip and fall if it caused, knew about, or should have known about the hazard and failed to

**James C. Mahan**
**U.S. District Judge**

1    remedy it.  *Id.* at 322–23.  Whether a business owner had actual or constructive notice of a

2    hazard is ordinarily a question of fact for the jury.  *Id.* at 323; *see also Shepard v. Harrison*,

3    678 P.2d 670, 672 (Nev. 1984) ("A party's negligence becomes a question of law only when

4    the evidence will support no other inference.").

5         Summary judgment on a negligence claim is appropriate when the alleged tortfeasor

6    "negate[s] at least one of the elements of negligence."  *Foster*, 291 P.3d at 153.  Walmart

7    primarily attacks Cropper's deposition testimony and photos of the parking lot asphalt,

8    arguing that she has "provided no evidence a hazard existed, no evidence the alleged

9    condition constituted an unreasonably dangerous condition, no evidence supportive of a

10   finding that Walmart had notice of the alleged hazardous condition, nor any evidence the

11   alleged condition caused Mr. Cropper's fall other than speculation and hearsay."  (ECF No.

12   37 at 10).

13        Cropper, the only known witness of the incident, testified that her husband's fall

14   occurred in the parking aisle straight out from the store's pharmacy entrance in the first

15   parking stall after the handicap parking stalls.  (Dep. of Ann Cropper, ECF No. 37-4 at 5–7).

16   Cropper was sitting in the driver's seat of her car when she witnessed her husband walk from

17   the driver's side toward the front left fender when he suddenly fell to the ground.  (*Id.* at 8).

18   Furthermore, Cropper's daughter Jill Prunty testified that she went to the Walmart in March

19   2017 with her mother to take photos of the gravel hazard on which her father tripped and fell.

20   (Dep. of Jill Prunty, ECF No. 37-8 at 7–8).

21        Walmart offers the store's video surveillance taken on the day of the alleged

22   incident.[2]  The video does not show the gravel hazard or Cropper's slip and fall.  (ECF No.

23   37 at 4).  But the Croppers are seen in the video "walking to an entirely separate parking

24   aisle" from where Cropper alleges the incident occurred and where the photos were allegedly

25

26        [2] Cropper's argument that the court cannot consider Walmart's video surveillance
     because it is unauthenticated is unpersuasive.  (ECF No. 39 at 3).  At trial, Walmart could
27   offer competent testimony from its former asset protection manager Brittany Lopez to
     authenticate the video.  (Aff. of Brittany Lopez, ECF No. 37-6 at 4).  Thus, the video would
28   be admissible at trial and can be considered at summary judgment.  *See* Fed. R. Civ. P.
     56(c)(2); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

**James C. Mahan**
**U.S. District Judge**
                                             - 4 -

1    taken.  Put plainly, Walmart offers the video to prove that "Mr. Cropper's incident did not

2    occur where [his wife] claims it did." (*Id.* at 12).

3           Furthermore, Walmart points out that there are no painted parking lines in Cropper's

4    photos even though her own deposition testimony indicates that her husband fell "near the

5    intersection of multiple parking stalls at the top left corner of the subject stall near the

6    painted lines separating said stalls." (*Id.*).   Plaintiff's expert Steve Ireland indicated that

7    "there is no reason to believe the stalls were not separated with painted lines at the time of

8    the incident based off his review of aerial imaging." (*Id.*).

9           And the photos appear to be of gravel in the *center* of a parking stall which would

10   have been under the Croppers' car based on Cropper's testimony.  Walmart also offers its

11   own post-incident inspections (Aff. of Brittany Lopez, ECF No. 37-6 at 3) and the report of

12   outside investigator Pat Langin who found no "raveling" in the parking lot during his

13   inspection on October 26, 2017.  (Investigation Report of Pat Langin, ECF No. 37-9 at 3).  In

14   Walmart's words, Cropper "has not provided any photograph of the area near where the front

15   left fender of her vehicle would be located, let alone any photograph(s) depicting where Mr.

16   Cropper fell in [ ] the Walmart parking lot." (ECF No. 37 at 6).

17          Cropper's response is unresponsive to Walmart's main contention that Cropper has

18   not offered competent evidence of the existence of a gravel hazard on Walmart's premises

19   that caused her husband's fatal fall.  (*See* ECF No. 39).  While Cropper painted a detailed

20   picture of where and how her husband fell, her testimony is squarely refuted by Walmart's

21   video surveillance.  The video shows her and her husband walking past the parking stall

22   where she says the fall occurred and where the photos were allegedly taken.  Cropper does

23   not address the video in her response.  And her photos and testimony do not create a genuine

24   dispute over the existence of a gravel hazard.

25          Cropper's four experts do not create a genuine dispute either.  Cropper's liability

26   expert Joellen Gill and civil engineer Steven Ireland both explained that they took Cropper's

27   photos and testimony as to the location and existence of the hazard as given in forming their

28   expert opinions.  (Ireland Expert Report, ECF No. 37-10 at 4, 9; Dep. of Steven Ireland, ECF

**James C. Mahan**
**U.S. District Judge**

1  No. 37-11 at 3; Dep. of Joellen Gill, ECF No. 39-6 at 7).  *Cf. Williams v. Paris Las Vegas*

2  *Operating Co., LLC*, 461 P.3d 896 (Nev. App. 2020) (unpublished table decision) ("While

3  this expert report postulates that a foreign substance could make the floor slippery, neither

4  the report nor the Williamses present evidence of what that foreign substance might be.").

5       John Peterson's expert testimony that Walmart's parking lot inspections were

6  inadequate is premature and, otherwise, has low probative value.  *See McConnell v. Wal-*

7  *Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1169 (D. Nev. 2014) (excluding John Peterson's

8  expert testimony on the standard of care because "[a]dherence to insufficient policies will not

9  exculpate a negligent defendant any more than nonadherence to sufficient policies will

10  inculpate him").  After all, Walmart avers that "not a single incident has occurred involving

11  asphalt conditions in the subject parking lot in the five years prior to [Cropper's fall]."  (ECF

12  No. 40 at 9; *see also* Def.'s Resps. to Pl.'s Interrogs. No. 13, ECF No. 40-4 at 12–13).  In

13  other words, "the claims regarding insufficient policies and procedures are **irrelevant** to

14  Plaintiff's burden in this action **where she has yet to provide any evidence [that] an**

15  **unreasonable hazard existed on the premises** and that Walmart had notice of the same."

16  (ECF No. 40 at 9 (emphasis added)).

17       At bottom, Cropper has not offered competent evidence that establishes a genuine

18  dispute of material fact as to the first element of her negligence claim: Cropper's "[self-

19  serving] testimony supporting the existence of a hazard has been [refuted] per the objective

20  video evidence, the subsequent inspection on the subject premises [by investigator Langin],

21  and her own expert's testimony/report."  (*Id.* at 6).  As aforementioned, she cannot rely

22  solely on conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880

23  F.2d 1040, 1045 (9th Cir. 1989).  And if her evidence is merely colorable or not significantly

24  probative, summary judgment may be granted in Walmart's favor.  *Anderson*, 477 U.S. at

25  249–50; *see also FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's

26  bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand

27  summary judgment.").

28

**James C. Mahan**
**U.S. District Judge**

1    Cropper's lack of competent evidence requires granting summary judgment for

2    Walmart on her negligent hiring, training, and supervision and wrongful death claims as

3    well.  (*See* ECF No. 1-2 ¶¶ 29–33 (alleging that Daryl Cropper's death was due to Walmart's

4    negligence)); *see also Conover v. Vons Stores, Inc.*, No. 2:11-cv-01806-GMN, 2012 WL

5    4482591, at *4 (D. Nev. Sept. 25, 2012) ("Under Nevada's wrongful death statute, a

6    wrongful death claim must be based on some negligence or other wrongful act that causes

7    the death of the decedent."); *see also Long v. Diamond Dolls of Nevada, LLC*, No. 3:19-cv-

8    00652-LRH-CLB, 2020 WL 6381673, at *6 (D. Nev. Oct. 29, 2020) (holding that a plaintiff

9    must establish that the defendant owed a duty of care to the plaintiff to succeed on a

10   negligent hiring, training, and supervision claim).

11   Because a reasonable jury could not conclude that Cropper established that a gravel

12   hazard existed that caused her husband's fatal fall and, thus, that Walmart caused or was

13   charged with notice of a hazard, summary judgment is granted in Walmart's favor.  *Cf.*

14   *Goodman v. Walmart, Inc.*, No. 2:19-cv-1707-JCM-EJY, 2020 WL 5731800, at *3 (D. Nev.

15   July 24, 2020) (granting summary judgment in Walmart's favor after plaintiff provided no

16   evidence that a parking lot curb was unreasonably dangerous, and thus, that Walmart had a

17   duty to warn).

18   **IV.    CONCLUSION**

19   Accordingly,

20   IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Walmart's motion

21   for summary judgment (ECF No. 37) be, and the same hereby is, GRANTED.

22   The clerk shall close the case.

23   DATED January 15, 2021.

24   _____
     UNITED STATES DISTRICT JUDGE

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 7 -